J. W. BROWN v. THE STATE.

*No. 1225.   Decided February 3d, 1897.*

**1.   Swindling by Means of a Bank Check or Draft—Indictment.**

Where an indictment for swindling by means of a bank check or draft, alleged, in substance, that defendant represented that he had $500 on deposit in said bank, subject to his order, and that he had credit at said bank to the extent of $500, and that said check or draft would be paid when presented to said bank, which representations were false. Held: The allegations sufficiently charged swindling and, if proved, the offense would be made out.

**2.   Same—False Pretenses.**

In swindling the false pretenses may be sufficient where they consist alone of acts and conduct without any verbal assertion.

**3.   Same—Drawing Check or Draft Without Funds in Bank.**

The mere fact of drawing a check or draft upon a bank in which the drawer has no money, funds or credit, is not a fraudulent representation that he has funds or credit in said bank; and will not, alone, constitute the offense of swindling. Following, Ayres v. State, ante p. 1.

**4.   Same—Evidence.**

On a trial for swindling by means of a draft or check upon a bank where defendant exhibited to the seller of the goods a certificate of deposit issued by the Ft. W. Bank for a large sum of money, but stated that the same was partnership money, and that he preferred giving a personal check upon the Bank of K——, which he did. Held: Evidence as to defendant's status with both banks, and as to his alleged deposit with the Ft. W. Bank was admissible.

APPEAL from the District Court of Tarrant.   Tried below before Hon. S. P. GREENE.

Appeal from a conviction for swindling; penalty, ten years' imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

No brief for appellant.

Mann Trice, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of swindling, and obtaining thereby personal property in an amount exceeding $50 in value, and given ten years in the penitentiary; hence this appeal. The indictment charges that defendant obtained a diamond ring, of the value of $280, and a diamond pin, of the value of $220, from the prosecutor, in consideration of the following check or writing obligatory: "Kansas City, Mo., Aug. 26, 1896.   No. 3.   Missouri National Bank, pay to J. E. Mitchell, or order, $500.00, five hundred dollars.   J. W. Brown, Union Bank Note, K. C., Mo."   The representations set forth in the indictment in connection therewith are substantially as follows:   That he (the said J. W. Brown) was then and there the owner and had the right to dispose of said check, and that he falsely and fraudulently represented to said Mitchell that said check was a legal and valid obligation, and that he (said Brown) had the right and authority to draw and

dispose of the same, and that he had money to the amount of $500 on deposit in said Missouri National Bank, subject to his order, check, and disposal, and that he had credit at said Missouri National Bank to the extent of $500, and that said written instrument and check would be paid by said Missouri National Bank whenever presented there for payment, etc. In our opinion, the indictment is sufficient in this respect to charge the offense of swindling under our statute. If, on the trial, evidence was given to sustain either allegation of the indictment in connection with said check, to-wit: that he (said Brown) had money to the amount of $500 on deposit in said bank, subject to his order, etc., or that he had credit at said Missouri National Bank, etc., to the extent of $500, and that said check would be paid when presented to said bank, and the evidence should further show that these representations were false, the State's case would be made out. But the evidence simply showed, in effect, that defendant came to the jewelry store of the prosecutor, and first bought a ring for $175, and gave the prosecutor a check for that amount, but afterwards, on the same day, returned to the store, bringing the ring back, stating that he desired to exchange it. The defendant then selected a diamond ring and a diamond pin, and asked prosecutor what he would take for both, and was told that he could have the ring for $280 and the pin for $220, and he agreed to take them at that price, and they were delivered to him. Defendant then asked prosecutor for the check which he had given for the ring in the morning, and prosecutor gave it to him. Defendant then gave prosecutor a check for $500 for the ring and pin, said check being the same as set out in the indictment. At the time, defendant showed prosecutor a certificate of deposit in the First National Bank of Fort Worth for $20,225, and stated that he could give him a check on that bank, but that was firm money, and he preferred to give a check on his own personal account with the Missouri National Bank of Kansas City, Mo. Prosecutor testified that he parted with the possession and title of the diamond ring and pin to the defendant wholly upon the strength and by reason of the $500 check which defendant gave in payment therefor, and relied upon said check for payment for said diamond pin and ring. On this subject the court charged the jury, at the instance of the State, as follows: "The jury are charged that in a case of swindling, it is not necessary that the pretenses, devices and fraudulent representations should be in words. There may be a sufficient false pretense and device and fradulent representation in the acts and conduct of the party, without any verbal representations of a fraudulent nature. The mere act of giving a check is a representation that the drawer of the check has sufficient funds on deposit with the drawee, or sufficient credit with such drawee, to give such a check, and that the same will be paid when presented to such drawee." The defendant saved a bill of exceptions to this charge, and assigns the same as error. The first portion of this charge, as an abstract proposition of law is correct, to-wit, false pretenses may consist in acts. Mr. Wharton says (See, 2 Whar. Crim. Law, § 1170): "The conduct and

acts of the party will be sufficient, without any verbal assertion." He cites several illustrations,—among others, that of a person who assumed the garb of an Oxford University student and by such garb and conduct represented himself as a student of said university, and so obtained goods. It was held that the false pretenses were complete, though not a word passed as to his status. And this doctrine is announced by our own court in the case of Blum v. State, 20 Tex. Crim. App., 578, cited by the Assistant Attorney-General. That was a case of a merchant who had formerly dealt with the prosecutor, and had represented to him that the business was his own. On the the day of the alleged swindle, at 12 o'clock, the defendant, Blum, secretly sold out his business to his wife and daughter, and thereafter purchased goods of the prosecutor to the amount of about $90. The court in that case say "that no false pretenses in words were made by the appellant, for he was not present in person, and none are shown to have been made by the wife and father-in-law of appellant, who acted as his agents in the purchase of the goods, that Goodman, the prosecutor, may have entertained the opinion that the appellant still owned the property in the bakery and grocery, and made the sale upon the belief that he still owned said property. But this did not affect the question, unless the acts of the parties in purchasing the goods induced that belief at the time. It was simply an error of opinion upon the part of the prosecutor in parting with his goods, and the knowledge of the fact that he was acting upon such belief or opinion, without correcting it, will not subject the defendant or his agents to a charge of having made a false pretense by withholding the information which would have corrected that belief. It was his own opinion as to the existence of a fact which did not exist, and not the acts, declarations, or representations of the parties with whom he was trading, which caused him to be deceived." In that case it was held that the principle above announced did not apply, and that there were no such acts and conduct as constituted a fraudulent representation. Mr. Bishop (2 Bishop's New Crim. Law, § 421) cites the following case from the English courts: Where a prisoner was charged with falsely pretending that the postdated check given by himself was a good and genuine order for £25 and of the value of £25, whereby he obtained a watch and chain, and the jury found that, before the completion of the sale and delivery of the watch by the prosecutor to the prisoner, he represented to the prosecutor that he had an account with the bankers on whom the check was drawn, and that he had a right to draw the check, though he postdated it for his own convenience, all of which were false, and that he represented that the check would be paid on or after the day of the date, but that he had no reasonable ground to believe that it would be paid, or that he had the funds to pay it, he was held to be properly convicted. Id.; 2 Whar. Crim. Law, § 1163. In this case, it will be seen that the instrument was in the nature of an after promise: but it will also be observed that, in connection with said instrument, there was a present representation of an existing fact which was, to-wit,.

that he had an account with the bank on whom the check was drawn, and that he had a right to draw the check. In a note to these cases, Lesser v. People, 73 N. Y., 78, is cited. In that case the prisoner passed a check on the prosecutor drawn by one Stineback, that was represented by the defendant at the time to be a valid security, and that it was postdated because it was so late in the day, and the bank was closed. No account was kept at said bank by the said Stineback, and it was held in that case that the representations constituted a false pretense.

We have examined the authorities accessible to us at this point, and have found no case where the mere drawing of a check on a bank, in which the defendant has no funds and has no credit, will constitute the offense of swindling, and we believe no well-considered case will be found holding such to be the case. In the case of Martin v. State, 36 Tex. Crim. Rep., 632, this court held that the drawing of a check, and passing the same, and the statement in connection therewith that the payee would have no trouble in getting his money, was not equivalent to representing that he then had money in said bank, or that he was authorized to draw against it; and the doctrine was there announced that the mere drawing of a check on a bank, in which the drawer had no money or credit, was not a false representation to the effect that the drawer did have funds in said bank, or that he did have credit in said bank, and that this fact alone did not constitute the offense of swindling in our State. This was followed in Ayers v. State, ante p. 1. It frequently happens that men in business draw checks or drafts upon banks or upon individuals in whose hands they have no funds and with whom they have no credit. They make no representations in regard thereto; they are asked no questions on the subject; and to hold that the mere drawing of such a check, where the party has no funds is a fraudulent representation, constituting the offense of swindling, we think would be going too far. There may be cases in which, in connection with such act of drawing a check, the conduct and acts of the party are such as to amount to a fraudulent representation that the party has funds or credit in said bank, and so, under such circumstances, the offense may be made out. We would not be understood as holding that there may not be such cases, but we do hold that the mere fact of drawing a check on a bank in which the drawer has no money, funds or credit, is not a fraudulent representation that he has funds or credit in said bank, and will not alone constitute the offense of swindling; and such we understand to be the charge of the court as applied to this case. In our view the charge of the court was error. Notwithstanding the former decisions, heretofore alluded to, on this subject, we have been induced to further examine the authorities, in order more fully to present our views on this question. We do not believe, under the facts and circumstances of this case, the court erred in admitting the testimony in regard to the status of the defendant's account with the Missouri National Bank, nor in admitting the testimony in regard to defendant's alleged deposit, with the

national bank · in Fort Worth. It · is not necessary to discuss other assignments. · For the error discussed, the judgment is reversed, and the cause remanded.

*Reversed and Remanded.*